# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**SETTLEMENT FACILITY DOW**
**CORNING TRUST,**

      Case No. 11-10562

    **Plaintiff,**

      Honorable Denise Page Hood

**v.**

**P. LYNNE D'IORIO, THE D'IORIO GROUP,**
**THE FLORIDA GROUP LLC (also known as**
**P. Lynne D'Iorio & Associates), RANDI HIGBEE,**
**and RBBC, INC.,**

    **Defendants.**

_____/

## ORDER GRANTING MOTION FOR AN ORDER TO SHOW CAUSE

On March 26, 2013, the Court entered a Judgment and Order granting the Motion for Summary Judgment filed by Plaintiff Settlement Facility-Dow Corning Trust ("SF-DCT") against Defendants P. Lynne D'Iorio, The D'Iorio Group, The Florida Group LLC a/k/a P. Lynne D'Iorio & Associates, Randi Higbee, and RBBC, Inc. Defendants were "permanently enjoined from further contact with their former clients who have submitted claims before the SF-DCT and specifically, from taking any action to assert a lien for attorney fees, expenses or any other costs against such former clients related to their SF-DCT award." (Doc. No. 66, Order, p. 11)

The SF-DCT has learned that D'Iorio recently contacted claimants. A claimant

received a letter from D'Iorio asking the claimant to pay fees out of any SF-DCT award, to notify the SF-DCT that the claimant is no longer represented by attorney Jeff Bodily and to provide information about the claimant's relatives and heirs. (Motion, Ex. 1) Another claimant received a November 18, 2014 letter from D'Iorio indicating that she had agreed to waive her lien in the claimant's case in return for the claimant's agreement to pay D'Iorio directly. (Motion, Ex. 2) The SF-DCT believes that these are not isolated events and that D'Iorio has sent similar letters to other SF-DCT claimants. The SF-DCT argues that D'Iorio's actions are in direct violation of the Court's Order.

The SF-DCT's counsel sent a letter to D'Iorio on November 21, 2014 explaining that her contact with the SF-DCT claimants violated the Court's Order and asking D'Iorio immediately cease and desist such violations. (Motion, Ex. 3) D'Iorio responded on December 3, 2014 indicating she had filed a motion with the court requesting clarification about contact and an appeal of the Order[1] and also various allegations against the SF-DCT representatives. (Motion, Ex. 4)

The SF-DCT claims that D'Iorio does not deny she has violated the Court's Order and her email gives no indication that she intends to abide by the Court's Order

---

[1] The Court's docket does not reflect any such motion or any appeal was filed by any party. The time to file post-judgment motions or an appeal has passed.

going forward. The SF-DCT asserts that D'Iorio intends to continue violating the Court's Order by directly contact the SF-DCT claimants and seeking payment from them.

The Court has the inherent authority to enforce its Orders through exercise of its contempt powers and that contempt power extends to injunctions. *United States v. United Mine Workers of America*, 330 U.S. 258 (1947); *Gunn v. Univ. Comm. to End the War in Vietnam*, 399 U.S. 383, 389 (1970) ("an injunctive order is an extraordinary writ, enforceable by the power of contempt. The judicial contempt power is a potent weapon.") There are two types of contempt: criminal and civil. The real distinction between criminal and civil contempt is the nature of the relief sought and the purpose of that relief. *Penfield Co. v. SEC,* 330 U.S. 585 (1947). A contempt proceeding is civil if the purpose is "remedial" and intended to coerce the person into doing what he is supposed to do. *Shillitani v. U.S.*, 384 U.S. 364 (1966). Civil contempt is to coerce future compliance with the order and to compensate the opposing party for the party's violation of an order. *United States v. Bayshore Associates, Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991). Remedial or compensatory action are essentially backward looking, seeking to compensate the complainant through payment of money for damages caused by past acts of disobedience. *Garrison v. Cassens Transport Co.,* 334 F.3d 528, 543 (6th Cir. 2003)(quoting

*Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1344 (3d Cir. 1976)). Wilfulness is not a necessary element of civil contempt. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1948); *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983). The burden of proof in a civil contempt proceeding is on the party seeking a contempt order but need not be beyond a reasonable doubt. *Int'l Union, United Mine Workers of America, v. Bagwell,* 512 U.S. 821, 827 (1994). Civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are coercive sanctions and avoidable through obedience. *Id.* at 827. Civil sanctions may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. *Id.*

If the purpose is to vindicate the court's authority by using "punitive" measures or punishing the wrongdoer, the proceeding is one for criminal contempt. *Garrison,* 334 F.3d at 543. Criminal contempt is a crime and the penalties, including imprisonment and noncompensatory fines, may not be imposed without the protections of the Constitution required in criminal proceedings. *Int'l Union, United Mine Workers of America,* 512 U.S. at 826, 838. The rules governing criminal contempt is found in Fed.R.Crim.P. Rule 42(b). For "serious" criminal contempt proceedings involving imprisonment of more than six months or noncompensatory and excessive fines, these protections include the right to a jury trial. *Id.* at 826-27,

838-39.

In a civil contempt proceeding, "although civil contempt may serve incidentally to vindicate the court's authority, its primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance." *TWM Mfg. Co.*, 722 F.2d at 1273; *Redken Laboratories, Inc. v. Levin*, 843 F.2d 226, 230 (6th Cir. 1988). To hold a litigant in contempt, the movant must present clear and convincing evidence that shows that the litigant "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Electrical Workers Pension Trust Fund of Local Union No. 58 v. Gary's Elec. Serv. Co.,* 340 F.3d 373, 379 (6th Cir. 2003). "Clear and convincing evidence is not a light burden and should not be confused with the less stringent, proof by a preponderance of the evidence." *Id.* Once the movant establishes a prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he or she is *presently* unable to comply with the court's order by showing categorically and in detail why he or she unable to comply with the court's order. *Id.* A court must evaluate whether the contemnor took all reasonable steps within his or her power to comply with the court's order. *Id.*

In this case, the SF-DCT submitted documents to support its claim that D'Iorio has contacted claimants in violation of the Court's Order. The SF-DCT also

submitted an email from D'Iorio which does not deny the SF-DCT's claim that she has had contact with the Claimants. D'Iorio failed to appear at the scheduled hearing in this matter held on February 9, 2015. D'Iorio did not timely file a response to the motion, although she filed a letter with the Court on February 18, 2015, after the hearing was held in this matter. She claims that she was merely responding to former clients' calls. D'Iorio asserts she is disabled and does not have a permanent address. Based on the documents before the Court, the Court finds D'Iorio has not shown that she is unable to comply with the Court's Order that she not contact any SF-DCT claimant to request fees relating to any SF-DCT award. The Court finds D'Iorio in contempt of the Court's March 26, 2013 Order enjoining D'Iorio from contacting former clients. By her own admission in her letter to the Court, D'Iorio has contacted former clients.

The Court granted the SF-DCT's motion on the record, requiring the SF-DCT's counsel to submit an affidavit as to the amount of sanctions to be awarded. SF-DCT's counsel submitted an affidavit asserting the SF-DCT has incurred not less than $10,000 in attorney fees in preparing and arguing the Motion to Show Cause. In addition, the SF-DCT has incurred not less than $1,300 in expenses associated with the instant motion. (Doc. No. 71, Affidavit)

The Court, having found D'Iorio in contempt of the Court's March 26, 2013

Order, accordingly,

IT IS ORDERED that the SF-DCT's Motion for an Order to Show Cause (**Doc. No. 68**) is GRANTED.

IT IS FURTHER ORDERED that the SF-DCT is awarded $11,300 in attorney fees and costs in connection with the investigation, the filing and appearances made relating to the instant Motion to Show Cause within 60 days from the date of this Order.

IT IS FURTHER ORDERED that Defendant D'Iorio and all Defendants are permanently enjoined from further contact with their former clients who have submitted claims before the SF-DCT and specifically, from taking any action to assert a lien for attorney fees, expenses or any other costs against such former clients related to their SF-DCT award.

s/ Denise Page Hood  
DENISE PAGE HOOD  
United States District Judge

DATED: September 29, 2015